ROBERT S. BREWER, JR.
United States Attorney
JONATHAN I. SHAPIRO
Assistant U.S. Attorney
California Bar No.: 268954
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8225
Email: jonathan.shapiro@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 17CR3690-AJB |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| MORGAN ROCKCOONS, | Date: May 28, 2019<br>Time: 9:00 a.m. |
| Defendant. | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Jonathan I. Shapiro, Assistant United States Attorney, and hereby files its Sentencing Memorandum.

In his sentencing memorandum, Defendant Morgan Rockcoons has correctly calculated the guidelines as agreed upon by the parties. He is facing a guidelines range of 15-21 months in custody. The United States recommends that the Court sentence Mr. Rockcoons to 21 months in custody.

## I.

## STATEMENT OF THE CASE

On November 8, 2017, Morgan Rockcoons ("Defendant") was indicted by a federal grand jury for (i) money laundering, in violation of Title 18 U.S.C. §

1956(a)(3)(B); and (ii) operating an unlicensed money transmitting business, in violation of Title 18 U.S.C. § 1960(a).  Defendant was arrested on February 9, 2018, in the District of Nevada, and he was arraigned on the indictment on February 22, 2018. Defendant was thereafter released on bond.

On October 24, 2018, a federal grand jury returned a six-count superseding indictment. In addition to the offenses charged in the original indictment, Defendant was charged with four counts of wire fraud, in violation of 18 U.S.C. § 1343, in connection with a fraudulent real estate scheme perpetrated by Defendant while he was on pretrial release.  Defendant was arrested on October 28, 2018.  He was arraigned on the superseding indictment on October 29, 2018, and he was ordered detained pending trial.

On March 7, 2019, Defendant pleaded guilty to counts 2 and 3 of the superseding indictment (operating an unlicensed money transmitting business and wire fraud).

## II.

## STATEMENT OF FACTS

### A.    Identification of Defendant

In September 2015, Homeland Security Investigations (HSI) learned that San Diego-based bitcoin exchangers were advertising their services on the website LocalBitcoins.com.  The most prolific San Diego-based seller at the time went by the nickname "Metaballo," and advertised his services as both a trader and a seller of bitcoin.

HSI reviewed Metaballo's website and found Facebook pages for Kinetics.cc and Metaballo.  The Kinetics Facebook page included a post, dated July 11, 2014, which read:

> "Dear Bitcoin community, my name is Morgan Rockwell, I am CEO of Bitcoin Kinetics Inc.  I created the first Bitcoin operated service machine to allow Bitcoin to be used in the real world in all machines and businesses.  We are rapidly

*United States' Sentencing Memorandum*

2

*17CR3690-AJB*

expanding and growing into new territories, industries into a competitive and profitable environment."

Metaballo's Facebook page included posts identifying Defendant as "Morgan Rockwell." This Facebook page also contained a post, dated January 15, 2014, stating "Metaballo on LocalBitcoins.com buy and sell bitcoins with trader Metaballo."

In April 2016, Defendant's LocalBitcoins.com profile showed that he continued to advertise as a trader and seller of bitcoin in San Diego, with his profile reflecting that he had engaged in more than 500 transactions, describing him as a professional trader. As of October 2017, Defendant's profile indicated that he conducted more than 1,000 bitcoin trades with more than 644 people.

In September 2015, April 2016, and again in August 2017, HSI confirmed that neither Defendant nor any of his companies were registered as a money services business with FinCEN or the State of California.

**B.    Undervover Investigation**

In December 2016, an undercover officer (UCO) (known to Defendant as "Nima") left a voice message with Defendant (at the number posted by Defendant on LocalBitcoins.com) requesting his service in exchanging cash to bitcoin. In subsequent text message conversations, Defendant explained to the UCO that Defendant was aware of and followed anti-money laundering and know your customer requirements. Defendant also informed the UCO of the currency transaction reporting requirement, stating that if the UCO engaged in a transaction in excess of $10,000 USD cash, information on the UCO would have to be obtained. In the course of this early exchange of text messages with the UCO, Defendant provided the UCO with Defendant's full name as "Morgan Rockwell," and further provided his "legal name" as "Morgan Rockcoons." Defendant also provided the UCO with Defendant's LocalBitcoins.com profile as proof that Defendant exchanged between 30 and 60 bitcoins per week.

*United States' Sentencing Memorandum*                    3                                    17CR3690-AJB

In a text message, the UCO informed Defendant that the UCO was engaged in the manufacture of butane hash oil.  The UCO informed Defendant that the cash was being exchanged to bitcoin to buy an extraction device, which would be used to manufacture hash oil.  In text messages, Defendant made statements to the UCO that indicated that Defendant was knowledgeable about butane hash oil.  Defendant also told the UCO that Defendant operated a business engaged in the sale of marijuana and hash oil in San Francisco.  Defendant offered to assist the UCO in selling hash oil manufactured by the UCO, via Defendant's business.  Defendant wrote to the UCO that Defendant wanted to be the "Steve Jobs of cannabis and bitcoin," and that he had provided currency exchange services to other marijuana industry individuals and entities.

In a text message, the UCO told Defendant that, because the UCO was engaged in the manufacture and sale of hash oil, the UCO did not want to provide any identifying information. Defendant responded that he understood and suggested that the UCO could break up the transaction over two days, each transaction being less than $10,000 USD, to avoid the reporting requirement.  Defendant later completely abandoned the requirement of making the UCO break up the transaction into two separate transactions, accepting all $14,500 from the UCO in one transaction, and not requiring any identifying information from the UCO.

The UCO and Defendant discussed via text messages various options for providing the cash to Defendant, including structuring Western Union money transfers, structuring the purchase of money orders, and structuring the deposit of cash into one of Defendant's bank accounts.  Ultimately, Defendant and the UCO agreed that the UCO would send the cash via FedEx to Defendant.  Defendant specifically gave the UCO a series of suggestions on how to conceal the cash in the package to avoid detection.

On December 30, 2016, the UCO sent Defendant $14,500 USD cash concealed in a FedEx package for the purpose of Defendant exchanging it to bitcoin.  On January 3, 2017, the package was delivered to Defendant, which Defendant confirmed to the UCO via text message. On January 8, 2017, Defendant transferred 9.998 bitcoins to the UCO, with an equivalent value of $9,208.62, keeping a fee of $5,291.38 (more than thirty-six percent).

### C.    **Wire Fraud**

Bitcointopia

In spring 2018, Defendant began promoting Bitcointopia on the internet at bitcointopia.org[1] and via social media, for example, Twitter.  A purported real estate development in the desert in Elko County, Nevada, Defendant touted Bitcointopia as a place where bitcoin is "legal tender."  ROCKCOONS described Bitcointopia as "the capital of a newly formed nation run by Bitcoin appropriations, Blockchain voting & BIP based laws."  The website listed contact telephone number (619) 721-3384 (the same number that ROCKCOONS used to communicate with the undercover agent conducting the earlier money laundering investigation) and the contact email land@bitcointopia.org.

On the website, ROCKCOONS offered parcels of land for sale, claiming: "The land is currently owned by Bitcointopia, Inc corporation."  ROCKCOONS further stated, "500-1000 Acre plots are for sale for 0.5 BTC per acre."

Victim 4

In June 2018, Victim 4, a San Diego resident, visited bitcointopia.org and learned that he could purchase one acre of land for .5 bitcoin (one bitcoin is currently worth

---

[1]    Attached as Exhibit 1 is a pdf of some pages from bitcointopia.org as it appeared in May 2018.  However, in order to get a better understanding of how a prospective victim would have experienced the website in May 2018, a navigable, archived version of the website is preserved at https://web.archive.org/web/20180510080128/http:/bitcointopia.org/.

*United States' Sentencing Memorandum*                              *17CR3690-AJB*

about $7,800).   Reviewing the website, Victim 4 learned that "[r]unning water is provided by a brand new water pump" and that "500 Acres of Solar Panels are being installed to build a local power grid."

Victim 4 wished to buy land as detailed on the website.  Accordingly, on June 26, 2018, Victim 4 communicated with ROCKCOONS via ROCKCOONS' Twitter account "nodefather."  ROCKCOONS wrote, "You let me know when your ready. Need: Legal Name Name of property TXID of BTC payment Email to land@bitcointopia.org."  On June 27, 2018, Victim 4 visited the bitcointopia website and pressed the button "BUY LAND" to conduct the transaction.  Pushing that button, Victim 4 arrived at a screen that directed him to "Send BTC Payment Here to Verified Addresses" and listed two addresses where payment could be sent. The same page stated, "Please provide 4-6 weeks for you land deed & city contract to arrive." Victim 4 sent .5 bitcoin to the listed blockchain address as directed. Victim 4 then sent an email to land@bitcointopia.org with his legal name (for the deed) and the transaction identification confirming that he sent payment.  ROCKCOONS confirmed via Twitter direct message that he received this email and the payment.

On On June 28, 2018, Victim 4 received an email from land@bitcointopia.org. The email was from: "Bitcointopia Inc Founder - Morgan Rockwell 4160 South Pecos Road, Las Vegas NV 89121 6504279098 land@bitcointopia.org."  ROCKCOONS wrote:

> thank for your purchase of land! Your payment, once confirmed will be logged with your information, including your name, the name of your property & your TXID on the Bitcoin Blockchain to record your payment. The information is transferred to the county recorder and put into public records within 2 months or less.
>
> Please allow for 4-6 weeks for the deed to be filed and mailed out with the accompanying City Plan Contract. This contract states that Bitcointopia Inc will pay the first 5 years of annual land taxes, then those taxes become your responsibility after 5 years. City Services are provided on the contingency of this contract being agreed to & signed by your Bitcoin

*United States' Sentencing Memorandum*                  6                                  *17CR3690-AJB*

transaction and signature on paper.

You will then be able to come do what you want with your land, such as camp, bring an RV, build a home or start a business. We will be building the city grid around all these plots to bring city services to your land, city services will be protected to be available by late 2019.

We want to thank you for your support of the Bitcointopia Expansion Project and helping start the Bitcointopia City. Your purchase of land helps fund the construction of the city and the development of Bitcointopia into the future. If you have any questions or want to come to see the land at any time, just message us and we
will accommodate you.
Thank you for your support & purchase.

Thereafter, Victim 4 continued to communicate with ROCKCOONS via email, Twitter direct message, and Telegram. On July 20, 2018, Victim 4 asked ROCKCOONS via Telegram, "Any timeline for deeds?" ROCKCOONS replied, "will be sometime in Aug for deed, submitted it June 29, so takes minimum of 6-8 weeks for county to record." Later on the same day, ROCKCOONS wrote to Victim 4, "I know you purchased land and you might have trust issues like all Bitcoin users do especially with me."

By early August 2018, Victim 4 still had not received his deed, and he participated in online forums that discussed ROCKCOONS and shared derogatory information about him. On August 2, 2018, ROCKCOONS messaged Victim 4 from his Twitter account and wrote that he had "no problem giving you refund if you don't want to participate in our new city." Victim 4 replied on the same day, "If I wanted a refund, when would that be processed?" ROCKCOONS asked, "Is that what you want?" and Victim 4 replied, "I'm simply asking what that process would look like." ROCKCOONS wrote, "I did submit your deed to the county, so I'd have to pay the taxes and transfer title to company name and then once that title has Bitcointopia name on the deed I'd just send BTC back, it's not very fast takes about 3 weeks to get a

response from the county, it's like selling the land all over again." In fact, Defendant had not submitted Victim 4's deed to the county.

Elko County Records Office

Investigation at the Elko County, Nevada Records Office established that Bitcointopia Inc. owns two parcels of land. Specifically, on May 22, 2018, Bitcointopia Inc. bought parcel 024-001-001 (2.9 acres) for $2,300 and parcel 024-032-004 (2.070 acres) for $1,999. The parcels are not contiguous. There is no record that any other name or entity associated with Defendant (Rockcoons, Rockwell, Bitcointopia Inc., Bitcoin Inc, or Kinetics Inc) owns any land in Elko County.

Records checks confirmed that other than the two parcels listed above, there have been no deeds of sale or transfer, or requests to transfer or sell any land by Bitcointopia Inc, Rockcoons, Rockwell, Bitcoin Inc, or Kinetics Inc.

Other Victims

Investigation has identified at least nine other victims of Defendant's land-fraud scheme who were willing to speak with agents. For example:

On May 18, 2018, Victim 1, relying on the representations on bitcointopia.org, paid 1.6 bitcoin for a 3 acre parcel in Bitcointopia. As of September 12, 2018, Victim 1 still has not received a deed for the purchased land.

On June 1, 2018, Victim 2, relying on the representations on bitcointopia.org, paid .2 bitcoin for a .5 acre parcel in Bitcointopia. As of September 11, 2018, Victim 2 still has not received a deed for the purchased land.

On June 17, 2018, Victim 3, relying on the representations on bitcointopia.org, paid 1.6 bitcoin for a 3.25 acre parcel in Bitcointopia. As of September 12, 2018, Victim 2 still has not received a deed for the purchased land.

The land purchased by Victims 1-3 between May 2018 and June 17, 2018, totaled 6.75 acres of land. Bitcointopia Inc only owns about 5 acres of land in Elko County,

*United States' Sentencing Memorandum*                    8                    *17CR3690-AJB*

Nevada.  When Victim 4 purchased 1 acre of land on June 27, 2018, Bitcointopia had no more land to sell.

### III.

### ARGUMENT

A sentence at the high-end of the combined offense level is warranted in this case.

Defendant's violation of 18 U.S.C. § 1960 (operating an unlicensed money transmitting business – count 2) might be viewed as a regulatory offense.  But this shouldn't minimize the seriousness of this offense.  Section 1960 was created as part of an anti-money laundering effort, "designed to prevent the movement of funds in connection with drug dealing."  United States v. Faiella, 39 F. Supp. 3d 544, 545-46 (S.D.N.Y. 2014) (quoting United States v. Bah, 574 F.3d 106, 112 (2d Cir. 2009)). According to the House Committee on Financial Services report on the bill that would be incorporated into the Act, the purpose of the Act was to "provide[] the United States government with new tools to combat the financing of terrorism and other financial crimes." H.R. Rep. No. 107-250, at 33 (2001).

Defendant's bitcoin exchange business served to undermine the transparency of our financial system, subverting anti-money laundering and know-your-client regulations. His conduct helped to create a shadowy market where individuals could conduct nefarious activity outside the scrutiny of law enforcement and regulatory authorities.

And once Defendant was charged and arrested for operating an unlicensed money transmitting business, he continued to commit crime, this time wire fraud in violation of 18 U.S.C. § 1343. While on pretrial release and under the supervision of this Court, Defendant devised a scheme to cheat individuals out of their money. The nature of Defendant's scheme is apparent in the website he published to promote the scheme: (https://web.archive.org/web/20180510080128/http:/bitcointopia.org/).

But the human toll is best captured in the words of a victim of Defendant's Bitcointopia scheme (who requested to remain anonymous), who wrote:

It's hard to put into words how this experience has affected me. When I first heard about Bitcointopia, my parents were going through financial struggles and were at risk of losing their home. I wanted to have a backup for all of us if that worst case scenario were to take place. Morgan's vision of making land available to people who could purchase parcels with Bitcoin and live on it without paying for electricity or water was intriguing to me, and in retrospect, too good to be true. I purchased some land from him and began to ask more questions so I could start planning what I'd do with the land. The more I dug, the more I became concerned that I had been scammed. Before he had my Bitcoin, he was relatively open to my feedback and was willing to talk with me. After he had it, he became a completely different person. He turned into a dictator and would block anyone who questioned the authenticity of the project, challenged his authority or accused him of scamming them.

This was a major red flag for me. I panicked and asked him for a refund. I had worked for years accumulating that bitcoin and he had almost all of it now. He was livid over my request but begrudgingly said he would return my bitcoin. He said he was too busy to do it immediately. I was extremely patient through all this considering he said it would take two weeks, and I know Bitcoin transactions are nearly instantaneous. I waited a couple weeks and asked him how the refund was coming. He would provide an excuse as to why it couldn't be returned when he promised and then would give me a new, vague timeframe for when he'd refund me. This must have happened a dozen times over months and months and months, all while he attacked my character, dragged me along with new excuses and belittled me. I felt lost and helpless the entire time.

The one statement that really tormented me (and still does) was when he said in the heat of an argument and out of nowhere "I know who you are [my first and last name]". He would say things like this occasionally and they always made me want to just give up the Bitcoin and walk away. I felt that's what he expected me to do. Nonetheless, the words ate away at me and led me to worry all the time. It disrupted my sleep on countless occasions and kept me up at night thinking to myself "this person who is trying to intimidate me knows who I am, has my contact information and knows where my elderly parents live too".

I spent many months being tortured by his mind games and dragged along, in hopes that he would just simply return my money and never contact me again. As a result, my performance at work suffered, my relationships with family and friends suffered and my health (both physical and mental) suffered due to the stress of all this and the lack of sleep that coincided. All of this occurred at a time where performance reviews were happening at work, which contribute to whether you get a raise or not. This was one of my worst performing quarters of all time and my raise reflected that. I believe I would have had a more significant raise had I never met Morgan, had not been distracted by his games and had been able to sleep properly and not worry all the time.

He didn't only rob me of my Bitcoin, he took a year of my life, caused me emotional damage and directly impacted my finances in multiple ways. His actions have forever made me a more guarded and distrusting person and I hope he realizes that this was not a victimless crime.

Under the circumstances, 21-months in custody is a fair and reasonable sentence in this case.

## IV.

### RESTITUTION

The Government has attempted to contact the victims of Defendant's wire fraud scheme. As of the date of this filing, the Government has received three Victim Impact Statements from these victims, which are attached at Exhibit 2. The Government therefore requests a continuance of the

*United States' Sentencing Memorandum*

11

*17CR3690-AJB*

restitution portion of Defendant's sentence for no longer than 90 days pursuant to 18 U.S.C. § 3664(d)(5) to give the Government an opportunity to ascertain the losses caused by the scheme.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court sentence Defendant to 21 months in custody, which is the high-end of the guidelines range agreed to by the parties.

DATED: May 21, 2019

Respectfully submitted,
ROBERT S. BREWER, JR.
United States Attorney

/s/*Jonathan I. Shapiro*
Jonathan I. Shapiro
Assistant United States Attorney